**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**DELTA DIVISION**

**SOUTHERN FORESTRY AND WILDLIFE LLC d/b/a Southern Forestry and Wildlife Real Estate** — **PLAINTIFF**

**v.** **No. 2:23-cv-189-DPM**

**DON BULLARD and CROOKED BAYOU PROPERTIES LLC** — **DEFENDANTS**

**ORDER**

Walter Hixson didn't tell his brother Bob that the Ducks and Bucks's Hunting Club property was for sale. He didn't show him Benton Gann's brochure. The brothers didn't communicate about the club property in any way before Bob bought it. They have been in business together. And they sometimes discuss property and sometimes go in together to buy it. They also buy property individually. These are the now undisputed material facts about Gann, the Hixson brothers, and this property.

The Court appreciates the parties completing the record, as requested, with the Hixsons' depositions. The Court likewise appreciates the supplemental briefing in response to the Court's preliminary Order, *Doc. 34*. The parties have addressed, thoroughly and carefully, whether the procuring cause doctrine applies to this

dispute. The renewed cross motions for summary judgment join all the issues.

Gann presses an argument that the Court addressed, and rejected, in its first Order. For the reasons given before, and now, the Court holds again that the parties' ambiguous contract doesn't obligate Don Bullard to pay Gann the commission solely because Gann identified Bob Hixson as a prospect approximately eight months before Bob bought the property. *Doc. 34 at 8–9.*

Gann rightly emphasizes the contract's penultimate "if" sentence: "If an identified buyer buys or is a member of a business entity that buys the above-described property, the SELLER is responsible for paying the AGENT the agreed real estate commission." *Doc. 34 at 13.* If that sentence was the whole of the parties' agreement, the case would be different. The parties, though, agreed on other material terms—this was a "Real Estate Showing Agreement", and the commission was due "for the procurement of a buyer . . .[.]" Doc. *34 at 13*. When combined with Gann's highlighted sentence, the agreement's title and the procurement term introduce some ambiguity into the parties' relationship; the Arkansas common law's procuring cause doctrine applies to resolve it; and that doctrine determines the parties' obligations. There is more here than a simple disagreement between the parties about their contract's meaning. This contract—especially the procurement term in context—is "susceptible to more than one

reasonable interpretation." *Crockett v. Shelter Mutual Insurance Co.*, 2019 Ark. 365, *3, 589 S.W.3d 369, 371 (2019).

The Court must consider the whole contract, giving every part effect. *RAD-Razorback Ltd. Partnership v. B.G. Coney Co.*, 289 Ark. 550, 554, 713 S.W.2d 462, 465 (1986). As Gann rightly emphasizes, the parts must be harmonized into one whole. *Ibid.* His interpretation, though, converts a quartet into a solo. No "general versus specific provision" problem is presented. *Compare Pate v. Goyne*, 212 Ark. 51, 45, 204 S.W.2d 900, 901 (1947). Instead, the parties dispute their obligations under an ambiguous writing, requiring the Court to consider the entire document and all the circumstances, including the undisputed extrinsic evidence, especially about the Hixson brothers. *Smith v. Prudential Property and Casualty Insurance Co.*, 340 Ark. 335, 341, 10 S.W.3d 846, 850 (2000).

Gann was not the procuring cause of Bob's purchase. Gann made efforts. And his course of performance shows what the parties intended in their deal: identification of prospects, plus some efforts to close a sale. *RAD-Razorback*, 289 Ark. at 555–56, 713 S.W.2d at 466. Beyond identification, the particulars of those efforts drive the calculation of whether the broker was the proximate or efficient cause of the sale. *Hatchett v. Story*, 221 Ark. 120, 121–23, 252 S.W.2d 78, 79 (1952) (George Rose Smith, J.). Gann asks whether he had to be the sole cause. No—the efficient cause. The precedent makes plain that this is

a fact-specific calculation, variations on the procuring-cause principle rather than one clear note. *Farm Credit Bank of St. Louis v. Miller*, 316 Ark. 388, 392–93, 872 S.W.2d 376, 379 (1994) (surveying cases). Here, Gann identified prospects, made two site visits (including one with a prospect), contacted prospects, and prepared the comprehensive brochure. *Doc. 42-4*. All these efforts show the parties' deal in motion. If this had been the names-only deal now urged, all this was beyond contractual duty's call. Instead, Gann was living up to his side of this agreement, showing the property in person and on paper, and doing his best to earn the commission for procuring an identified buyer. But the now undisputed facts make plain that Gann's efforts had nothing to do with Bob learning about the property or buying it many months after Gann identified him as a prospect. Gann wasn't this sale's proximate or efficient cause. No commission is due.

Gann's new authorities do not support a different result. Consider, for example, *Magby v. Atkinson Realty, Inc.*, 2006 WL 2879455 (Ark. App.). This unpublished decision of the Arkansas Court of Appeals is not precedent. Ark. Sup. Ct. R. 5-2(c). Comparing it with this case is illuminating, though. *Magby* involved an exclusive form listing agreement, unlike the nonexclusive showing agreement here. The *Magby* listing agreement had a limited term, unlike this no-term deal. The listing agreement wasn't ambiguous, as this agreement was. And Mr. and Mrs. Magby learned about the parcel from the agent, and

got information from the agent, during the listing period. They weren't situated like Bob, who was an identified stranger to Gann's efforts. The procuring cause doctrine is the default Arkansas rule, which applies here because the parties' non-exclusive showing agreement didn't unambiguously require Bullard to pay Gann simply for having provided the ultimate buyer's name. *Farm Credit Bank,* 316 Ark. at 392, 872 S.W.2d at 379; *see also Hodges v. Bayley*, 102 Ark. 200, 203, 142 S.W. 92, 93 (1912) (an introduction-only case).

Gann argues hard that this case turns on credibility. But the non-parties involved have all been deposed. Their testimony on the material facts was unequivocal. No genuine dispute about those facts exists. See the Court's too-long first Order as supplemented by this one. Gann also suggests that the Court can't rely on Bob Hixson's deposition because it ended prematurely. This telephone deposition did sour on re-cross examination. Bob said he wasn't answering any more questions—then he changed his tune, saying he would answer. By that point, Gann's counsel was (understandably) frustrated and hung up. The issues, though, had been fully ventilated before this closing exchange occurred. Good cause for disregarding Bob's testimony does not exist.

*

Bullard and Crooked Creek's renewed motion for summary judgment, *Doc. 42,* is granted. Gann's renewed motion for summary

judgment, *Doc. 48*, is denied. The motion *in limine*, *Doc. 51*, is denied as moot. Judgment will issue.

So Ordered.

D.P. Marshall Jr.
United States District Judge

10 September 2026